# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ROBERT LEE M.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 18-2444-JWL** |
| **ANDREW M. SAUL,**[2] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the

Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error

in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment

shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the

Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security.
In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is
substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance
with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

# I.     Background

Plaintiff argues that the ALJ erroneously failed to address or consider limitations related to Plaintiff's impairments which the ALJ found not severe within the meaning of the Act and regulations at step two of the sequential evaluation process; failed properly to assess Plaintiff's residual functional capacity (RFC) in numerous ways, including failing his duty to develop the record and obtain a medical opinion regarding Plaintiff's physical RFC, failing adequately to account in the RFC assessed for the moderate mental limitations he found Plaintiff has both in the broad mental functional area of interacting with others and in the area of concentrating, persisting, or maintaining pace, erroneously evaluating Plaintiff's allegations of symptoms resulting from his impairments, and erroneously weighing the medical opinions of treating mental health professionals; and failed to sustain the Commissioner's burden at step five of the sequential evaluation process by failing to resolve the apparent conflict between the Dictionary of Occupational Titles (DOT) information regarding the representative jobs allegedly available to an individual such as Plaintiff and the vocational expert's testimony regarding those jobs.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to

the weight of the evidence.  Substantial evidence is more than a scintilla, but it is less

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

 The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is

not a quantitative exercise, for evidence is not substantial if it is overwhelmed by other

evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen,

865 F.2d 222, 224 (10th Cir. 1989).

 The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues in the order they are reached when applying the sequential evaluation process.

## II.     Step Two – Impairments That Are Not Severe

Plaintiff argues, "The ALJ … did not address or consider any limitations related to [Plaintiff's 'not severe'] impairments after finding them to be 'no[t]-severe.'" (Pl. Br.

30).  He quotes Soc. Sec. Ruling (SSR) 96-8p, "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'  While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."  (Pl. Br. 30-31).

The Commissioner argues two points.  The ALJ stated he considered "Plaintiff's 'medically determinable impairments' and his 'medical impairments' in evaluating" his RFC, and the court, as is the usual practice, should take him at his word.  (Comm'r Br. 7) (quoting R. 843).  And, Plaintiff has not only failed to show that the ALJ did not consider all his impairments but does not point to any functional limitation resulting from his "not severe" impairments which were not assessed by the ALJ.  Id.

In his Reply Brief, Plaintiff argues, "Defendant references boilerplate language found in every decision, and, the reference is to the ALJ's credibility determination – not the RFC.  In fact, the ALJ pointedly and specifically discusses only the 'severe' physical impairments in assessing the RFC."  (Reply 4) (citing R. 843-844).

## A.    Standard for Evaluating "Not Severe" Impairments

An impairment is not considered severe if it does not significantly limit a claimant's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or

combination of impairments at step two of the sequential evaluation process, Plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities.  Williams, 844 F.2d at 751.  However, he must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  Under the regulations, the Social Security Administration (SSA) will consider the combined effect of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity" to establish disability.  20 C.F.R. § 404.1523(c); see also 20 C.F.R. § 404.1545(a)(2), SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2018).

### B.    Analysis

Plaintiff's argument conflates the regulatory requirement that an ALJ consider all impairments when assessing RFC with a non-existent requirement to discuss "not severe" impairments when assessing RFC.  The ALJ noted the requirement that in assessing RFC he must "consider all of the claimant's impairments, including impairments that are not severe."  (R. 837, citing 20 C.F.R. §§ 404.1520(e) and 404.1545; SSR 96-8p).  He stated that he made his RFC assessment "[a]fter careful consideration of the entire record," id. at 842, and as Plaintiff acknowledges, in summarizing his analysis of Plaintiff's allegations of symptoms he based that analysis on "claimant's medically determinable impairments," and found that the "facts in the record show that the claimant's medical

impairments caused some difficulties, but suggest that the claimant's symptoms were not disabling prior to the date last insured." Id. at 843 see also (Reply 4).

While Plaintiff is correct that the ALJ did not discuss which RFC limitations relate to each of Plaintiff's "not severe" impairments, the ALJ recognized his duty to consider all of the "not severe" impairments and specifically stated that he had considered all the evidence and Plaintiff's medically determinable impairments. As the Commissioner argues, the court's general practice "is to take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173 (citing United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004), and Andrews v. Deland, 943 F.2d 1162, 1170 (10th Cir. 1991). As in Hackett, the court sees no reason to depart from that practice here, particularly since Plaintiff cites to no record evidence of a functional limitation resulting from a "not severe" impairment which was not adequately accounted for in the RFC assessed.

## III.    RFC Assessment

### A.    Duty to Develop the Record

Plaintiff argues there are no medical opinions or medical evidence stating functional limitations from his severe physical impairments. (Pl. Br. 29). He argues, "The ALJ should have fulfilled his duty to develop the record fully and fairly and obtained some medical opinion as to [Plaintiff]'s physical functional limitations." He argues this is so because disability hearings are non-adversarial, an ALJ must develop the arguments for and against granting benefits and must make reasonable effort to ensure the record contains sufficient evidence to assess RFC, and an "ALJ is precluded from

relying on his own 'medical expertise' in establishing the RFC." Id. (citing Sims v. Apfel, 530 U.S. 103 (2000); Perales, 402 U.S. 389; Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994); Thompson v. Sullivan, 987 F.2d 1482, 1493 (10th Cir. 1993); Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir 1987);[3] Baker v. Barnhart, 84 F.App'x 10, 14 (10th Cir. 2003)).

The Commissioner implies, without citation to record evidence in support, that Plaintiff's assertion that there is no medical evidence stating functional limitations resulting from Plaintiff's physical impairments is inaccurate. (Comm'r Br. 6). He argues that an RFC assessment is an administrative finding within the ALJ's duty and there is no requirement for a direct correspondence between a medical opinion and the RFC. Id. Finally, he argues that Plaintiff asserted through his attorney at both hearings that the record was complete, he did not request a consultative examination regarding his physical functioning, and the court should not remand in these circumstances. Id.

Plaintiff argues that the Commissioner ignored the case law cited in Plaintiff's brief and his reliance on Chapo is misplaced because that court was concerned about the staleness of one medical opinion and ordered the ALJ to obtain an updated medical opinion on remand whereas in the record here, there is not even one medical opinion. (Reply 3). Quoting Whittle v. Colvin, No. 13-CV-0580-CVE-FHM, 2015 WL 630923, at

---

[3] Plaintiff cited the case of "Kemp v. Bowen, 186 F2d 1469, 1476 (10th Cir. 1987)" but such a case does not exist at the location cited. The court assumes Plaintiff's counsel made a typographical error, and although there are several Tenth Circuit cases titled Kemp v. Bowen, the one cited above seems to fit with Plaintiff's argument and most closely matches the citation given.

*6 (N.D. Okla. Feb. 12, 2015), Plaintiff argues that an ÁLJ cannot simply invent an RFC. (Reply 3). Plaintiff asserts that the Commissioner's argument, that Plaintiff's attorney confirmed at the hearing the record was complete, is an improper post hoc argument and it relates to a new regulation requiring a claimant to submit all evidence or notify the ALJ of evidence requested but not received five days prior to the hearing. (Reply 3). He reiterates his argument that Social Security proceedings are not adversarial and argues that "Defendant and/or the ALJ is responsible for arranging for consultative examinations and for obtaining opinions from treating sources." Id. (citing Sims, 530 U.S. 103; Perales, 402 U.S. 389; and 20 C.F.R. § 404.1454(a)(3)).

As Plaintiff suggests, the ALJ has a duty to develop the record:

The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.

Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993) (citations, quotations, and brackets omitted). The facts Plaintiff alleges were missing but necessary were medical evidence and a medical opinion regarding his physical capabilities. However, the record contains medical evidence regarding Plaintiff's physical impairments, and the ALJ discussed that evidence. (R. 843-44). As the Commissioner's brief suggests without specifically citing, the record contains two medical opinions regarding Plaintiff's physical abilities, one completed by Dr. Tawadros on November 19, 2013 at the reconsideration level on Plaintiff's first application (R. 187-

9

88), and the other by Dr. Byrnes on September 19, 2017 at the reconsideration level on the subsequent application.  Id. at 961-62.  Although both physicians opined Plaintiff's physical impairments are not severe and neither suggested physical functional limitations, the ALJ considered the evidence and found Plaintiff has physical impairments including severe impairments of degenerative disc disease, degenerative joint disease of the lumbar spine, and mild bilateral carpal tunnel syndrome.  (R. 838-39).  He found that Plaintiff's physical impairments, in part, limited him to light work and only occasionally climbing stairs and ramps, and never climbing ropes, ladders, or scaffolds; occasionally stooping, kneeling, and crouching, but never crawling; occasionally reaching overhead, frequently handling; and to avoid concentrated exposure to extreme heat and cold, excessive vibrations, hazardous machinery, and unprotected heights.  Id. at 842.

Central to Plaintiff's argument is that the ALJ should have ordered a consultative examination and sought a current opinion regarding Plaintiff's physical functional limitations.  The regulations effective when this case was decided require "a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision."  20 C.F.R. § 404.1519a(b) (2017) (effective March 26, 2012).  But Plaintiff's only argument in this regard appears to be that (1) no doctor has provided specific functional limitations, (2) no other medical evidence specifically addresses Plaintiff's physical functional limitations, and (3) an ALJ may not rely "on his own 'medical expertise' in establishing the RFC," therefore the evidence is insufficient to make a decision and a medical examination is necessary.  (Pl. Br. 29-30).

While each premise of Plaintiff's argument is correct, that does not require the conclusion Plaintiff suggests. This is so because there is no evidence the ALJ relied upon his own "medical expertise" to assess the physical RFC in this case. As the Commissioner suggests in his Brief, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a). Moreover, the final responsibility for determining RFC rests with the Commissioner, and in cases before an ALJ he has assigned that responsibility to the ALJ. 20 C.F.R. § 404.1546(c).

Plaintiff attempts to discredit Howard by relying on an unpublished opinion of the District Court for the Northern District of Oklahoma. (Reply 3) (quoting Whittle, 2015 WL 630923, at *6). This court is aware of no circumstance in this Circuit in which an unpublished decision of a district court might be more persuasive than a (binding) published decision of the Tenth Circuit. Moreover, Plaintiff does not quote the first two sentences of the paragraph of the Whittle opinion upon which he relies:

> The Court acknowledges that "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). The Tenth Circuit has "rejected [the] argument that there must be specific, affirmative, medical

evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." Id.

Whittle, 2015 WL 630923, at *6. To be sure, as the Whittle court went on to note an "ALJ cannot simply invent an RFC." Id. But, that is not what happened here. Here, the ALJ performed his duty in accordance with the regulations and SSR 96-8p. He considered the evidence, medical and nonmedical, and assessed an RFC based upon that evidence. More is not required.

As this court noted more than eight years ago, the narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or medical opinions in the record. Therefore, in this case the mere lack of a medical opinion suggesting specific physical functional limitations or of other medical evidence addressing specific physical functional limitations does not make the evidence as a whole insufficient to allow the SSA to make a decision and will not trigger a duty to order a consultative examination.

This is especially true since Plaintiff was represented by counsel before the ALJ

who did not even hint that a consultative examination might be necessary:

> In cases such as this one where the claimant was represented by counsel, "'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'"

Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing Branum v. Barnhart, 385

F.3d 1268, 1271 (10th Cir. 2004) (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th

Cir.1997))).

## B. The ALJ's Findings at Step Three of Moderate Limitations in Two Broad Areas of Mental Functioning—Concentrating, Persisting, or Maintaining Pace; and Interacting With Others

Plaintiff notes that the ALJ found Plaintiff to have moderate limitations in each of

these two broad mental functional areas. (Pl. Br. 31, 32) (citing R. 840, 841).[4]  He argues

that limiting Plaintiff to unskilled, routine, repetitive tasks fails adequately to account for

a moderate limitation in concentrating, persisting, or maintaining pace, id. at 31, and that

although a moderate limitation in interacting with others accounts for the ALJ's

---

[4] Plaintiff's Brief speaks of "maintaining concentration, persistence, or pace" (Pl. Br. 31) but the ALJ found "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation." (R. 841).  Moreover, in laying out his step three analysis, the ALJ introduced the four broad areas of mental functioning (the "paragraph B" criteria of the Mental Listings) and named this area consistently with the regulations—"concentrating, persisting, or maintaining pace." (R. 840, see also, 20 C.F.R. § 404.1520a(c)(3) ("concentrate, persist, or maintain pace" is one of the four broad functional areas); 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00E(3) ("concentrate, persist, or maintain pace" is one of the paragraph B criteria)).  The court's review is directed at the Commissioner's final decision and it will use terms of art as used by the Commissioner except when the use of such terms is in some manner inappropriate.

limitation to no contact with the public as part of a job, and for no more than occasional contact with coworkers, it also requires the ALJ to explain why he did not include some limitation on interacting with supervisors. <u>Id.</u> at 32.

The Commissioner argues that Plaintiff is attempting to conflate the step three finding regarding whether a mental impairment is severe enough to meet a Listing with the RFC assessment of mental functional limitations. (Comm'r Br. 8). He argues that is contrary to the regulations and Tenth Circuit law. He points out that both SSR 96-8p and the decision at issue make clear that the findings regarding the paragraph B criteria at step three of the process are not a mental RFC assessment—which requires a more detailed assessment. <u>Id.</u> (citing SSR 96-8p, and R. 841-42). He argues that contrary to the unpublished and nonbinding cases cited by Plaintiff in support of his argument, the Tenth Circuit has held in a published decision that a restriction to unskilled work might account for moderate mental limitations found at step three of an ALJ's decision. <u>Id.</u> at 9-10 (citing <u>Smith v. Colvin</u>, 821 F.3d 1264, 1268-69 (10th Cir. 2016); and <u>Virgil v. Colvin</u>, 805 F.3d 1199, 1204 (10th Cir. 2015)). The Commissioner argues that Plaintiff does not point to specific record evidence demonstrating Plaintiff has problems interacting with supervisors, and the Commissioner points to Plaintiff's submission that he has no trouble getting along with authority figures and to the fact he had worked as a deputy sheriff and as a volunteer firefighter, both of which involve a strict hierarchy. <u>Id.</u> at 11.

### 1.    *Assessing Mental Impairments*

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments. 20 C.F.R. § 404.1520a (2018) (effective Mar 27, 2017). In evaluating the severity of mental impairments at steps two and three, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Id. § 404.1520a(c)(3). After rating the degree of limitation in each functional area, the Commissioner determines the severity of Plaintiff's mental impairments. Id. § 404.1520a(d). When all functional areas are rated as "none" or "mild," the agency will generally conclude at step two of the sequential evaluation process that Plaintiff's mental impairments are not severe. Id. § 404.1520a(d)(1). If the mental impairments are severe, the technique requires an evaluation of whether the impairment meets or equals a listed mental disorder by comparing the step two findings and the medical evidence with the criteria of the listings. Id. § 404.1520a(d)(2). The four broad mental functional areas are defined as the Paragraph B criteria of most of the Listings of mental disorders. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00E; see also, § 12.00A (all mental disorder Listings except 12.05 contain Paragraph B criteria). If the Commissioner determines that Plaintiff's mental impairments do not meet or equal a listing, he will then assess Plaintiff's RFC. Id. § 404.1520a(d)(3).

In determining RFC, the Commissioner will consider Plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work." Id. § 404.1545(a)(4). The regulations provide that "[a] limited ability to carry out certain mental activities, such

as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [Plaintiff's] ability to do [work.]" Id. § 404.1545(c).

The Commissioner has clarified the difference between evaluating the severity of mental limitations at steps two and three based upon the broad functional areas identified in the psychiatric review technique and assessing mental RFC. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 146 (Supp. 2018). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four mental functional areas. Id. RFC must be expressed in terms of specific work-related functions. Id. at 147. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id. at 148. Therefore, an ALJ should not state a mental RFC in terms of the four functional areas but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand rather than the broad mental functional areas. Id. at 144.

## 2. The ALJ's Findings

At step two the ALJ found that Plaintiff has severe mental impairments including post traumatic stress disorder, depression/anxiety, and mild traumatic brain injury by history. (R. 838). Additionally, he found that Plaintiff has mild neurocognitive disorder

which is not severe. (R. 839). At step three the ALJ found Plaintiff had moderate

limitation in understanding, remembering, or applying information; moderate limitation

in interacting with others; moderate limitation in concentrating, persisting, or maintaining

pace; and mild limitation in managing himself. Id. 840-41. Specifically, the ALJ noted

that in evaluating the area of interacting with others he took

> into consideration the letter dated December 1, 2017 from the principal of
> the high school the claimant's son attended (Ex. 38E). In this letter the
> principal notified the claimant that he was no longer welcome on any USD
> 362 school property for any reason except to attend the graduation of his
> son due to his 'aggressive and belligerent actions' towards the school
> district's superintendent and the assistant principal of the high school. The
> claimant reports in his function report that he spends time with others only
> when he goes to church on most Sundays, but that he otherwise avoids
> people and avoids situations that put him in a position to cause conflict with
> others (Ex. 2E/5-6). However, he reports that he has never been fired or
> laid off from a job because of problems getting along with other people
> (Ex. 2E/7). The overall evidence in the record shows that the claimant is,
> for the most part, capable of interacting independently, appropriately, and
> effectively on a sustained basis, but that he had some limitations in
> interacting and relating with coworkers and the general public prior to the
> date last insured.

Id. In evaluating the area of concentrating, persisting, and maintaining pace he noted

Plaintiff:

> reports in his function report that he has problems with concentration, but
> no problems with attention, memory, or completing tasks (Ex. 2E/6). The
> overall evidence in the record shows that the claimant had some difficulty
> in sustaining focus, attention, and concentration to complete tasks in a
> timely manner, but not to the extent that he was precluded from performing
> unskilled routine and repetitive tasks and medium or low production rate
> jobs prior to the date last insured.

Id. at 841.

The ALJ's mental RFC assessment was that Plaintiff:

could perform unskilled routine repetitive tasks. He could have no contact with the public as part of the job, and no more than occasional contact with coworkers. He should not have been [sic] required to perform what would be considered as high production rate jobs, although low and medium rate production rate jobs would have still been acceptable.

(R. 842) (finding no. 5, bold omitted).

### 3. *Analysis*

Plaintiff seems to argue for the proposition that an ALJ's finding of a moderate limitation at step two or three in any of the four broad mental functional areas requires assessing moderate functional limitations in the RFC for each of the individual mental abilities associated with that broad mental functional area. Whereas the Commissioner seems to argue that is never the case. As usual, the answer is somewhere in between. The fact both parties can find cases (although none of the cases cited by Plaintiff in this regard are binding precedent) where step two or step three findings such as those present in this case have reached conclusions favorable to the outcome they desire, is further indication that the real key lies in analysis of the Commissioner's decision in the facts and circumstances of this case. There is no per se rule that applies in every case.

In explaining his evaluation of concentrating, persisting, and maintaining pace, the ALJ explained that the moderate limitation he found in this area would not preclude "performing unskilled routine and repetitive tasks and medium or low production rate jobs prior to the date last insured" (R. 841), and that is what he assessed in his mental RFC—"[Plaintiff] could perform unskilled routine repetitive tasks. … He should not have been [sic] required to perform what would be considered as high production rate jobs, although low and medium rate production rate jobs would have still been acceptable."

(R. 482).  Although Plaintiff appeals to treating source medical opinions that he cannot work, the ALJ's evaluation of those opinions will be addressed later, and Plaintiff does not point to record evidence which precludes the ALJ's findings.

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

The court's consideration of the ALJ's evaluation of the area of interacting to others is to a similar effect.  The ALJ explained:

> The overall evidence in the record shows that the claimant is, for the most part, capable of interacting independently, appropriately, and effectively on a sustained basis, but that he had some limitations in interacting and relating with coworkers and the general public prior to the date last insured.

(R. 841).  And, as quoted above, immediately prior to that finding, the ALJ discussed the specific evidence upon which it was based.  He assessed mental RFC limitations, as Plaintiff acknowledged, that Plaintiff "could have no contact with the public as part of the job, and no more than occasional contact with coworkers."  Id. at 842.

Plaintiff's question, "What about supervisors?" ignores this evaluation, the ALJ's citation to Plaintiff's report "that he has never been fired or laid off from a job because of

19

problems getting along with other people" (R. 841), and the fact as noted by the Commissioner that Plaintiff had worked as a deputy sheriff and as a volunteer firefighter. Therefore, although the ALJ did not specifically state there is no need for a limitation on interacting with supervisors, Plaintiff is incorrect to argue, "The ALJ's decision is silent as to why he would impose limitations on [Plaintiff]'s ability to interact with the general public and co-workers but not supervisors." (Reply 6). Once again, Plaintiff's only appeal is to the opinion of his treating physician which was properly discounted by the ALJ. Plaintiff has shown no error in the ALJ's assessment of his mental limitations.

### C. Plaintiff's Allegations of Symptoms Resulting from His Impairments

Plaintiff attacks three of the ALJ's reasons for discounting his allegations of symptoms resulting from his impairments. He argues the ALJ's assertion that he did not report trauma symptoms from his accident until mid-2014, "is simply factually incorrect." (Pl. Br. 36) (citing R. 846). He argues it was error to rely on his part-time work, and the ALJ's reliance on his activities of daily living was overstated or mischaracterized. Id. at 37-38.

The Commissioner argues that Plaintiff's continuous part-time work "was a legitimate basis for determining that he was not as limited as he claimed"—that it shows an inconsistency between Plaintiff's allegation of disabling symptoms and his activities. (Comm'r Br. 16). He admits that Plaintiff did report symptoms from his 2011 accident before mid-2014 but argues that the ALJ's entire analysis does not turn on this one mistake. (Comm'r Br. 16). Finally, he argues that the ALJ is "not required to parrot Plaintiff's description of his activities," his summary of those activities was accurate,

Plaintiff was "able to perform all of the activities of daily living the ALJ described," and the ALJ did not equate household chores to employment.  Id. at 17.

### 1.     *The Standard for Evaluating Plaintiff's Allegations of Symptoms*

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[5]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

### 2. *The ALJ's Findings*

---

[5] Luna, Thompson, and Kepler, were decided when the term used to describe evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on June 27, 2017, when this case was decided. Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ" relate to an examination of a claimant's character, that is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

Plaintiff's Brief argues that the ALJ found him "not entirely credible" (Pl. Br. 37, 38), and in his Reply Brief he refers to "credibility" and the "credibility determination." (Reply 1). Since his argument and the case law he cites relate to the ALJ's finding that "the claimants statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. 843) (underline added), the court has considered them in that context.

As suggested in footnote 5 above, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 843). In the portion of the decision explaining his RFC assessment, the ALJ explained the standard controlling his consideration of Plaintiff's allegation of symptoms, summarized the evidence related to physical impairments and that related to mental impairments, and summarized and weighed the opinions of Plaintiff's treating mental healthcare providers at the Veterans Administration (VA). (R. 842-49).

### 3. Analysis

The ALJ's discussion in his RFC assessment is replete with discussion of the inconsistencies between Plaintiff's allegations of symptoms and other record evidence. The ALJ noted Plaintiff's reports of significant limitations to Dr. Davis, his psychologist, but noted "[t]he psychiatric notes describe a different level of functioning." (R. 845). He explained,

> In November 2014, he alleged having nightmares about trucks, but his mood and affect were still noted to be within normal limits (Exhibit 12F/27-34). In December 2014, he was able to start a new job at Home Depot (Exhibit 12F/18-19).

> The psychiatric notes describe a different level of functioning. At follow up visits with Dr. Duong in October 2014, December 2014, and January 2015, the claimant was still only noted to have an adjustment disorder diagnosis. He was taking his medication as prescribed and his mental status was good. No GAF score change was noted (Exhibit 12F/12-16, 19-23).

(R. 845). He noted Dr. Taylor's opinion "that claimant's overall symptoms related to TBI [(traumatic brain injury)] should improve over time." Id. (quoting Ex. 16F/4, R. 1303).

The court quotes the next two pages of the ALJ's discussion, underlines the inconsistencies mentioned, and notes the last paragraph which provides his conclusion regarding Plaintiff's allegations of disabling symptoms:

> In September of 2016, the claimant reported that he had resumed substitute teaching and enjoyed it. In October of 2016, he reported he was doing well and having more enjoyment in life, and that he was still able to part-time substitute teach. His mood and affect were noted to be within normal limits and he maintained good eye contact. His concentration was noted to appear to be "strong." He reported that he had not taken risperidone since early September. He reported that he was taking care of 7 rescue dogs. His insight was noted as fair and his judgment was good. In January of 2017, he reported inconsistent compliance with fluoxetine (Ex. 8A/6-7).
>
> The GAF scores in the record are considered as opinions to show the claimant's functioning on a given day. To this extent, they are given some weight to show that the claimant has only moderate difficulties, as evidenced by GAF scores ranging from 60 to 65.
>
> The facts show that although the claimant could not perform his past work through the date last insured, he could perform other work. He lamented during his testimony at the first hearing that he was now "driving 50 miles one way to work a $10 an hour job." Reduced wages and inconvenience are not relevant to the determination of disability under the Social Security Act. He admit [sic] to working part time, up to 25 hours a week, alleging that he cannot work full time. He alleges he is "putting on a show" when he works and still has depression under the surface. He alleges that he is performing poorly at the job, as he is easily distracted and cannot communicate well with customers (Hearing Testimony). Despite these allegations, the fact remains that he is working approximately half-time and that his employer has not terminated him. The objective medical evidence, considered with the claimant's allegations, fails to support a finding that he is unable to perform full-time competitive work activity, particularly if he worked in an unskilled occupation with reduced social demands. He alleged social difficulty working as a middle school substitute teacher and

as a sheriff's deputy.  Such allegations are consistent, as both work environments would have high stress levels, but such difficulty fails to establish an inability to perform any work activity whatsoever.

The claimant alleged he isolates at home and is depressive, but he motivates himself to take care of his home and pets, as well as parent his teenaged son.  His ability to cook, shop, drive, clean, and perform personal care shows an ability to handle at least unskilled work.  He alleged he is quick to anger and does not like going to public places (including the grocery store), but he can work up to 25 hours a week in a retail customer service job.  He can also serve as a volunteer firefighter, a position requiring personal judgment, as well as possible exposure to traumatic events.  He apparently deems himself competent to serve in that capacity, contrary to allegations of memory loss and confusion.  These continued activities and personal commitments are inconsistent with a finding that the claimant had disabling limitations through the date last insured.

Lastly, there are inconsistencies in his allegations.  He alleges past trauma from a tractor-trailer accident that occurred in 2011, but he did not allege trauma symptoms until mid-2014.  Also, despite dozens of chiropractic visits, there were no visits to the chiropractor between February 2011 and November 2011, and no mention of the May 2011 accident when he was seen in November 2013 (Exhibit l0F/12-13).  At the first hearing, the claimant alleged that he was fired from Home Depot due to non-performance in October 2014, but that they hired him back in January 2015 (Hearing Testimony).  Contrary to the allegations that he was terminated, the claimant reported to VA staff that he had quit his job due to fuel costs (Ex. l1F/24).  The claimant also testified at the first hearing that he was continuing to do strenuous physical activity at that time including riding a motorcycle, working out, and working at a hardware store retail job.

The claimant had functional limitations resulting from his impairments through the date last insured, but his allegation of disability is inconsistent with the evidence in the record, especially the objective medical findings cited above.  His functional limitations were not disabling through the date last insured.  He was limited to work at the light level of physical exertion through the date last insured due to the combination of symptoms caused by his severe physical impairments, which also accounted for his nonexertional postural and manipulative, and environmental limitations.  His specific manipulative restriction to frequent handling was due to his mild bilateral carpal tunnel syndrome.  His mental limitations of being limited to unskilled routine repetitive tasks, no contact with the public as part of the job, no more than occasional contact with coworkers, and no

high production rate jobs through the date last insured were due to the symptoms caused by his severe mental impairments.

The claimant's testimony at both hearings and his written statements do not support a finding of disability through the date last insured. His subjective physical and mental complaints and allegations far exceed the examination findings in his treatment records, as cited above in detail. In May of 2017, the claimant requested a VA social worker, Kimberly Ludwig, LSCSW, to take action to have some psychiatric treatment notes changed because they might hurt his disability case (Ex. 27F/76, 28F/l 7). He told Ms. Ludwig that he took issue with a progress note written by a registered nurse in the VA Mental Health Clinic (MHC), Michelle Davis, RN that made it "sound like he was just fine during the visit" when he wasn't just fine and had issues. He told Ms. Ludwig that he was applying for Social Security disability benefits and that he did not want anything in his record that indicates that he was "doing fine" when he was not. Ms. Ludwig noted that the claimant became agitated when talking to her about this topic. He stated that Nurse Davis' [sic] note contained lies and he wanted it changed. He then requested a meeting with Nurse Davis so he could "confront her" about her note. Ms. Ludwig informed the claimant that a meeting between him and Nurse Davis was not recommended and that she would not accommodate that request due to it being inappropriate.

In December of 2017, the claimant brought up the issue concerning Nurse Davis' [sic] progress note to a different VA social worker, Hope Bishop, LSCSW (Ex. 28F/17). He told Ms. Bishop that he went through an administrative process about getting Nurse Davis' [sic] record amended, but he received a letter that said that no changes would be made. He said he still believed this information in his VA medical records was not accurate and he had concerns that "this information will be seen by Social Security and could affect his disability determination."

**Although the record supports a finding that the claimant had some functional limitations that could have reasonably caused physical and mental limitations through the date last insured, the record does not document objective findings or treatment reasonably consistent with the symptoms and limitations the claimant alleges.**

(R. 846-47) (emphases added).

While it is error to rely on part-time work for the proposition that a claimant can perform work on a full-time basis, that is not what the ALJ did here. As the quotation

above makes clear, the ALJ relied on Plaintiff's part-time work to demonstrate several inconsistencies in his allegations of limitations, and the record evidence overwhelmingly supports his reliance. Plaintiff's appeal to Judge Posner's suggestion of "the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment" is likewise unavailing. (Pl. Br. 38) (quoting Hughes v. Astrue, 705 F.3d 276, 278 (7th Cir. 2013)). The Tenth Circuit does not so condemn mere consideration of daily activities as one among several factors in evaluating the consistency of a claimant's allegations of limitations. E.g., Bainbridge v. Colvin, No. 14-1409, 618 F. App'x 384, 388 (10th Cir. July 7, 2015) (relying on activities of daily living less strenuous, physically or mentally, than those considered in this case). And, as demonstrated in the quotation above the ALJ's discussion of daily activities relied on far more than household chores.

As the Commissioner points out only one of Plaintiff's arguments regarding the consistency analysis is correct. Moreover, Plaintiff does not even address the numerous other inconsistencies found by the ALJ. Where "the balance of the ALJ's [consistency] analysis is supported by substantial evidence in the record," the court will not reverse for a single error in that analysis. Branum, 385 F.3d at 1274.

### D.     Medical Opinions

Plaintiff claims the ALJ did not properly evaluate the treating source opinions of Dr. Falola, Dr. Pashek, and Dr. Davis. (Pl. Br. 33). He argues that the earlier case was remanded from this court because the ALJ did not consider those opinions. Id. (citing R. 939-54). He argues that the ALJ on remand should have recontacted those physicians to

obtain specific functional limitations instead of merely rejecting the opinions because they were on an issue reserved to the Commissioner. (Pl. Br. 33). He argues that in the earlier case this court found Dr. Davis opined specific limitations. Id. He argues the ALJ erred in concluding "the opinions were 'all based on the claimant's subjective contentions and are not supported by objective findings,'" and "[t]he ALJ d[id] not identify the purported inconsistencies between the subjective contentions and the objective findings." Id. He argues that in the earlier case this court "found Dr. Pashek's opinions supported by his review of Dr. Duong's records, … found the three opinions provided a basis for changing the ALJ's decision and, in light of the three opinions, the ALJ's decision was unsupported by substantial evidence." Id. at 34 (citing R. 948, 949, 951-52). Plaintiff goes on to explain how, in his view Dr. Pashek's opinion, id. at 34-35, Dr. Davis's opinion, id. at 35-36, and Dr. Falola's opinion should have been accorded greater weight. Id. at 36.

The Commissioner argues that the ALJ's weighing of the medical opinions was reasonable. He argues that none of Plaintiff's treating physicians identified specific functional limitations, and the ALJ evaluated each of their opinions and accorded little weight to each. (Comm'r Br. 12). He argues that the record evidence supports the ALJ's weighing. Id. at 12-13. He argues the Ruling relied on by Plaintiff to argue the ALJ should have recontacted these physicians was rescinded more than a year before the ALJ's decision at issue. Id. at 13-14. He argues the ALJ discussed the inconsistencies when considering Plaintiff's allegations of limitations and need not repeat this discussion when specifically evaluating the opinions. Id. at 14. The Commissioner argues that the

court in the earlier case before remand did not make findings regarding the weight to be accorded these opinions but found the opinions were new, material, chronologically relevant evidence requiring remand for consideration and weighing by the Commissioner on remand.  (Comm'r Br. 15).  Finally, he argues that the doctors' clinical findings are not opinions regarding functional limitations.  Id.

### 1.    *The ALJ's Findings*

The ALJ accorded little weight to the opinion ("has been unable and will continue to have difficulty maintaining a job and take care of his needs") of Dr. Falola, Plaintiff's psychiatrist, because Plaintiff alleged he doesn't like to leave the house due to his PTSD symptoms but "has been working part-time throughout essentially the whole period being adjudicated," because Dr. Falola did not provide specific mental functional limitations, and because whether an individual is unable to work within the meaning of the Act is an issue reserved to the Commissioner.  (R. 848) (quoting Dr. Falola's letter, R. 1299).  The ALJ accorded the letter opinions of Plaintiff's speech-language pathologist, Dr. Pashek, and psychologist, Dr. Davis little weight for the same reasons Dr. Falola's opinion was accorded little weight.  Id. at 849.  He then provided two additional reasons to discount the opinions: "The opinions from Dr. Falola, Dr. Pashek and Dr. Davis are all based on the claimant's subjective contentions and are not supported by objective medical findings in their own treatment notes."  Id.

### 2.    *Analysis*

In arguing that in the earlier case this court found Plaintiff's treating sources provided specific functional limitations, that the treating source opinions are supported by

evidence in the records, or found the opinions provided a basis for changing the ALJ's decision, Plaintiff's argument misunderstands the decision of this court before remand and misunderstands the purpose of judicial review of a decision of the Commissioner. As noted earlier in this opinion, the purpose of judicial review of a decision of the Commissioner is to determine whether the Commissioner applied the law correctly and whether substantial record evidence supports the decision reached by the Commissioner (the ALJ in this case). Lax, 489 F.3d at 1084; White, 287 F.3d at 905. Moreover, the court may not substitute its judgment for the Commissioner's, even if the evidence preponderates against the Commissioner's decision. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172; Bowling, 36 F.3d at 434.

As the Commissioner suggests, the court in the earlier decision did not weigh the treating source opinions at issue there—and now at issue here. Rather, it noted that the opinions had been provided to the Appeals Council after the first ALJ decision and the Council determined they were about a later time and declined to consider them in deciding to review the ALJ's decision. (R. 944). The court recognized that the question whether evidence rejected by the Appeals Council is new, material, and chronologically relevant is a question of law reviewable by the court de novo. Id. It recognized that the opinions at issue were new and material and stated, "The question before the court is whether they are related to the period on or before the date of the ALJ's decision." Id. at 947. The court analyzed the evidence and stated its conclusion—"On the facts of this case, the court finds that the opinions offered to the Appeals Council from three treatment providers are new, material, and related to the period on or before the date of the ALJ's

decision." (R. 949). The court reversed the decision below and remanded the case "in order for the Commissioner to consider the opinions of the three treatment sources and any related medical records." Id. at 953. Although the court found that the three opinions "provide[] a clear basis for changing the ALJ's decision," id. at 952, it could not, and it did not dictate the weight to be accorded those opinions on remand. The responsibility for weighing the evidence in the first instance is that of the Commissioner. While the Act provides authority for a court to remand for the immediate award of benefits, 42 U.S.C. § 405(g) (sentence four), that may be done only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986). The court did not do that.

Plaintiff's suggestion that the ALJ should have recontacted these treating sources for specific functional limitations is without merit. As the Commissioner points out SSR 96-5p, upon which Plaintiff relies for his assertion, was rescinded more than a year before the ALJ decision in this case. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p; Correction, 82 Fed. Reg. 16,869 (Soc. Sec. Admin. April 6, 2017). Moreover, Plaintiff was represented on remand by the same counsel who represents him before this court. (R. 835, 978). As noted above, an ALJ may rely on counsel to identify any issues requiring further development. Maes, 522 F.3d at 1096. Counsel could have requested the ALJ to recontact these treating sources, or he could have contacted them himself and sought clarification of specific mental functional limitations. There is no error in the ALJ's alleged failure to recontact the sources.

Plaintiff objects to the ALJ's finding that the doctors did not assess specific mental functional limitations, and argues that Dr. Davis's opinion that Plaintiff "would have difficulty with focus and concentration and it would be exceptionally difficult for [Plaintiff] to follow even basic work tasks [and] a return to work would undo the progress [Plaintiff] had made so far, as stress exacerbated his PTSD symptoms," constitutes such specific functional limitations. (Pl. Br. 33). While Plaintiff has accurately portrayed Dr. Davis's opinion, "difficulty with focus and concentration," "exceptional difficulty following basic work tasks," "undoing progress," and "exacerbated symptoms," are not specific functional limitations in individual work-related mental abilities.

Plaintiff next argues that in finding the opinions "all based on the claimant's subjective complaints and are not supported by objective findings," the ALJ failed to "identify the purported inconsistencies between the subjective contentions and the objective findings." Id. To the extent this argument suggests the ALJ inadequately addressed inconsistencies, the court notes it has already found that analysis sufficient and it will not repeat its discussion here. Plaintiff argues that Dr. Pashek's opinions are not limited to Plaintiff's subjective contentions, id. at 34, but the ALJ did not find the opinions limited to Plaintiff's subjective contentions, but that they are based on those contentions. An opinion may be based on many factors, but to the extent it is based on a doubtful factor, it may be properly discounted.

Attempting to show that the opinions are in fact supported by objective medical findings in the doctors' treatment notes, Plaintiff cites test results recorded in the treatment notes and argues that these results support the opinions of the doctors. Id. at

34-36.  However, neither Plaintiff, Plaintiff's counsel, this court, nor the ALJ are health care professionals qualified to interpret the results of medical, psychological, or clinical testing and decide whether they support the conclusory opinions stated in the doctors' letters.  It is the doctors' responsibility to demonstrate support for their medical opinions from the objective medical testing.  They should explain that support in their opinion and not leave it to the ALJ or some other layman to discern what factors, if any, support the opinion.  As the ALJ properly concluded, these opinions do not do so.

As the district court's remand order required, the ALJ in this case considered the medical opinions of Dr. Falola, Dr. Pashek, and Dr. Davis, and the related medical records.  He provided five reasons to accord little weight to each of the opinions, and those reasons are supported by the record evidence.  While there is record evidence which could support a different conclusion, Plaintiff has not demonstrated that the conclusion reached by the ALJ is unsupported or unreasonable, and the court may not substitute its judgment for that of the Commissioner.

## IV.    Step Five

Plaintiff claims the Commissioner did not meet his step-five burden to show work exists in the economy of which Plaintiff is capable, because the ALJ relied on testimony of a vocational expert (VE) which conflicts with the DOT.  (Pl. Br. 38).  This is so, in Plaintiff's view, because the ALJ assessed Plaintiff with the ability to reach overhead only occasionally, whereas the representative jobs identified by the VE and accepted by the ALJ require the ability to reach frequently.  Id. at 39.  The Commissioner argues that "Plaintiff's argument is foreclosed by Segovia v. Astrue, 226 F. App'x 801 (10th Cir.

2007)," wherein the court was faced with an argument like that presented here and rejected it because a job which requires frequent reaching may not require more than occasional overhead reaching. 226 F. App'x at 804. The Segovia court noted that the VE in that case was aware of the claimant's limitation to occasional overhead reaching and testified that the jobs identified were consistent with the RFC assessed and the DOT. Id. It concluded that the VE testimony was substantial evidence supporting the ALJ's decision. In his Reply Brief, Plaintiff cites Eighth Circuit cases for the proposition that a job with a general limitation in reaching greater than the RFC assessed limitation in overhead reaching constitutes an apparent conflict with the DOT which must be specifically addressed by the VE, or remand is necessary. (Reply 12) (citing Moore v. Colvin, 769 F.3d 987 (8th Cir. 2014); and Kemp ex rel. Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014)).

The court finds the Tenth Circuit's decision in Segovia persuasive. Here, the ALJ told the VE to assume an individual restricted to only occasional overhead reaching. The VE testified that such an individual would be capable of performing the representative jobs which the ALJ ultimately accepted. She also specifically testified that her testimony was consistent with the DOT, supplemented by information she "gleamed [sic] from [her] experience in the placement and evaluation of individual's subsequent to that publication." (R. 892). Such testimony, supplementing information contained in the DOT which deals with a broad range of abilities and positions throughout the economy, is the very purpose for having VE testimony. The position espoused by Plaintiff seeks to exalt form over substance in reviewing Social Security decisions. The court notes that

34

although <u>Segovia</u> is an unpublished decision and therefore not binding on this court, the Eighth Circuit opinions cited by Plaintiff are also not binding on this court—even though published.  The court finds the decision in <u>Segovia</u> is well-reasoned and is a decision of the Tenth Circuit.  It is therefore more persuasive to this court.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 15, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**